IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
IN ADMIRALTY

CASE NO.:

SMITH MARITIME, INC.,

      Plaintiff,

vs.

RQ CONSTRUCTION, LLC, a
foreign limited liability company,

      Defendant.

_____/

## COMPLAINT

COMES NOW, Plaintiff, SMITH MARITIME, INC., files its Complaint against Defendant, RQ CONSTRUCTION, LLC, and asserts an admiralty and maritime claim within this Honorable Court's admiralty and maritime jurisdiction in accordance with Rule 9(h) of the Federal Rules of Civil Procedure, and respectfully shows this Honorable Court as follows:

Jurisdiction and Venue

1.     This case involves a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure for damages caused by Defendant's breach of a maritime charter party agreement, as will more fully appear hereinafter. As such, this Court has admiralty jurisdiction in accordance with 28 U.S.C. § 1333 (1), and venue is proper in this district in accordance with 28 U.S.C. §1391(b)(2).

## Parties and Service of Process

2.      Plaintiff is a Florida corporation with its principal place of business at 967 Bulkhead Road, Green Cove Springs, Florida 32043, and it does business in this state.

3.      On information and belief, Defendant, RQ Construction, LLC, is a Delaware foreign limited liability corporation and maintains its registered principal place of business at 3194 Lionshead Avenue, Carlsbad, California 92010.

4.      On information and belief, Defendant, RQ Construction LLC, also has a corporate office located at 1620 Faraday Avenue, Carlsbad, California 92008, and logistic offices at 10832 New Berlin Road, Jacksonville, Florida 32226, and at 35 Durbin Station Court, Suite 104, St. Johns, Florida 32259.

5.      Defendant is registered to do business in the State of Florida, and, pursuant to Fed.R.Civ.P. Rules 4(b) and (c), the Clerk is requested to issue and serve it with summons through their designated registered agent for service of process, James Hahn, 35 Durbin Station Ct., #104, St. Johns, FL 32259.

## Basis for Complaint

6.      At all times relevant, Plaintiff owned the barge *ELVIS*, an ocean-going deck barge.

7.      Plaintiff and Defendant, through their respective brokers, began negotiations in November 2020 for the charter and possible purchase of the *ELVIS*. Those discussions were conducted on behalf of Plaintiff through Christopher Ernst, its Maritime Manager, and on behalf of Defendant through its broker, Nick Kokinos with

Ocean Marine Brokerage Services in Schriever, Louisiana.   None of Plaintiff's employees were directly involved with the negotiations, and none of Plaintiff's employees ever communicated directly with any of Defendant's employees during the negotiations for the charter of this barge.

8.      The parties ultimately entered into a BIMCO form BARGEHIRE 2008 Charter Party, dated January 21, 2021, attached hereto as part of **Exhibit "A,"** which, on information belief, was executed by Defendant on or about February 12, 2021.  See the email from Nick Kokinos to Michael Zapetis, dated February 12, 2021, attached hereto as part of **Exhibit "A."**  On information and belief, and based on the deletion Defendant made in Part II, paragraph No. 9 of the charter party, Defendant intended to use the *ELVIS* to carry sand and aggregate.

9.      At all times relevant prior to and during negotiations of the charter party, information regarding the *ELVIS*, including its deck capacity, scantling letters, and details pertaining to deck strength (*e.g.*, the frame location and the thickness of its deck plating, and the frame location and dimensions of its longitudinal stiffeners), was publicly available on the American Bureau of Shipping ("ABS") website.

10.      Although Defendant knew or should have known that the most current information noted above was available to it for the *ELVIS* on the ABS website, it never reviewed that information prior to or during negotiations of the charter party, but now complains that Plaintiff somehow misled it into relying on inaccurate facts regarding the barge's deck capacity and deck strength based on information that had long ago been posted on Plaintiff's website.

11.     At no time prior to Defendant's execution of the charter party did Defendant ever communicate to Plaintiff or its broker its requirement for a deck capacity of 3,500 PSF (Pounds per Square Foot).

12.     At no time prior to Defendant's execution of the charter party did Defendant ever communicate to Plaintiff or its broker any concerns regarding hull strength or wastage.

13.     Except for a February 5, 2021 email sent to Nick Kokinos, attached hereto as **Exhibit "B,"** which contains comments apparently written by someone in the RQ "Legal Department" regarding proposed changes in the charter party provisions and "the feasibility of renewing the barge's COI [Certificate of Inspection]" [emphasis added], at no time during negotiations of the charter party did Defendant ever request from Plaintiff or its broker a current U.S. Coast Guard Certificate of Inspection, and none was deemed necessary since Defendant made no representations that it intended to use the *ELVIS* for transporting hazardous cargoes.  To the contrary, Plaintiff presumed that the *ELVIS* would be used to transport sand and aggregate as noted above and as indicated by Defendant when Plaintiff was first approached for its charter.

14.     Plaintiff proposed a joint initial survey as required in Part II, paragraph No.10 of the charter party, and suggested using a local surveyor in Morgan City, Louisiana near the location where the *ELVIS* was berthed.  However, Defendant rejected that proposal and, instead, insisted on a survey at its sole expense by its hand-picked surveyor, Adam Hammer with Abled-Bodied Marine, Inc. in Jacksonville,

Florida.   Once the survey report was completed on or about March 5, 2021, Mr. Hammer refused to provide Plaintiff with a copy, explaining that it was "confidential." However, Defendant subsequently provided Plaintiff with a copy of the survey report, which was clearly not a joint one as required by the charter party.

15.    Although premised on the faulty assumptions explained in the email dated March 6, 2021, from Plaintiff's Port Captain, Jeff Kint, to Adam Hammer (attached hereto as **Exhibit "C"**), the Able-Bodied survey report concluded that the condition of the *ELVIS* was deficient in terms of its deck capacity and deck strength. On the basis of this survey report, Defendant began efforts to renegotiate the charter rate and the optional purchase price for the *ELVIS*, and when those efforts were unsuccessful, it repudiated the executed charter party and refused to accept delivery of the *ELVIS*.

16.    Once Defendant executed the charter party for the *ELVIS*, Plaintiff was forced to take it off the market rendering it unavailable for charter to other parties. Plaintiff tendered timely delivery of the *ELVIS* as required in Part I, section No. 17 and Part II, paragraph No.6 of the charter party, but as noted, delivery was rejected thereby triggering application of Part II, paragraph No. 7(e) of the charter party.

17.    Defendant's unreasonable refusal to accept delivery of the *ELVIS* resulted in foreseeable damages sustained by Plaintiff totaling at least $2.2 million.

18.    All conditions precedent have been performed, have occurred, or have been waived.

Count I

19.     Plaintiff realleges and incorporates by reference paragraphs 1 through 18 above as though fully stated herein.

20.     The Parties entered into a valid contract for good and valuable consideration regarding the sale of the *ELVIS* by the Plaintiff to the Defendant.

21.     Defendant breached the contract by failing to purchase the *ELVIS* pursuant to the contract.

22.     As a direct and proximate result of Defendant's breach of contract the Plaintiff has suffered direct, indirect, and consequential damages, including pre and post judgment interest.

WHEREFORE Plaintiff, SMITH MARITIME, INC., demands judgment in its favor and against Defendant, RQ CONSTRUCTION, LLC, together with pre and post-judgment interest, costs, and such other relief deemed just and proper.

Count II

23.     Plaintiff realleges and incorporates by reference paragraphs 1 through 18 above as though fully stated herein.

24.     The parties entered into a valid contract for the sale of the *ELVIS.*

25.     The Plaintiff possessed the barge and clear title to the *ELVIS* and was ready willing and able to deliver the *ELVIS* to the Defendant for the agreed upon consideration pursuant to the contract.

26.     As described above, the *ELVIS* is a unique vessel for the maritime trade and operations.

6

27.     The Plaintiff is entitled to specific performance of the contract for the sale of the *ELVIS* because the Defendant has unreasonably and without justification refused to accept delivery of the *ELVIS* and has failed and refused to pay the agreed upon consideration.

WHEREFORE Plaintiff, SMITH MARITIME, INC., demands judgment in its favor and against Defendant, RQ CONSTRUCTION, LLC, together with pre and post-judgment interest, costs, and such other relief deemed just and proper.

### Demand for Jury Trial

Plaintiff, Smith Maritime, Inc., demands a trial by jury on all issues so triable.

Respectfully submitted,

MCLEOD BROCK LAW, PLLC


**LINDSEY C. BROCK III, ESQ.**
Fla. Bar #971669
Primary E-Mail: lindsey@mcleodbrock.com
Secondary E-Mail: jennifer@mcleodbrock.com
9995 Gate Parkway North, Ste. 400
Jacksonville, Florida 32246
(904) 996-1100 Office Telephone
(904) 996-1120 Facsimile
**Attorneys for Plaintiff, Smith Maritime, Inc.**